PEOPLE v GREENFIELD (ON RECONSIDERATION)

Docket No. 264879. Submitted February 7, 2006, at Detroit. Decided
June 29, 2006, at 9:00 a.m. Leave to appeal denied, 477 Mich ___.
Christopher Greenfield was charged in the 52nd District Court with
operating a motor vehicle while under the influence of intoxicating
liquor, third offense. The district court, Julie A. Nicholson, J.,
suppressed the results of the defendant's breath alcohol tests after
concluding that the prosecution had failed to comply with the
court's discovery order to turn over to the defendant a videotape of
those tests that was made when the tests were administered at the
police station. Neither the prosecution nor defense counsel knew
that the videotape existed until the preliminary examination, and
the videotape had been automatically recorded over at some
undetermined time before that examination. Even without the test
results, however, the district court concluded that the prosecution
had presented sufficient evidence and bound the defendant over
for trial in the Oakland Circuit Court as charged. The circuit court,
Denise Langford Morris, J., subsequently denied the defendant's
motion to quash the information and denied the prosecution's
motion to admit the test results at trial. Relying on the district
court's conclusion that the prosecution had not complied with the
discovery rules, the circuit court determined that MCR 6.201(J)
permitted exclusion of the evidence. The prosecution appealed by
leave granted. The Court of Appeals issued an opinion on May 18,
2006, reversing and remanding, and the prosecution moved for
reconsideration. The Court of Appeals granted the motion and
vacated its prior opinion in an unpublished order entered June 29,
2006.

On reconsideration, the Court of Appeals held:

The district court abused its discretion by ordering the pros-
ecution to turn the videotape over to the defendant and by
suppressing the test results when the prosecution did not turn
over the videotape. The circuit court also abused its discretion by
denying the prosecution's motion to admit the test results. While
MCR 6.201(J), at the time, permitted a court to exclude evidence
for a party's failure to comply with the discovery rule, the
defendant was not entitled to discovery of the videotape, and the

prosecution violated no discovery rule by failing to turn it over. The videotape does not fall within any category of evidence subject to mandatory disclosure under MCR 6.201(A) or within any category of evidence discoverable under MCR 6.201(B) upon request to the prosecution. The defendant has not claimed that the videotape contained exculpatory evidence or showed that the police improperly administered the breath alcohol tests. Nor was there a deliberate attempt to conceal evidence. While a court may modify the requirements of the discovery rule on good cause shown, MCR 6.201(I), the failure to produce evidence that does not fall within any category of discoverable evidence does not constitute good cause requiring discovery under the rule. The defendant did not establish good cause for discovery of the videotape. Even if there had been a violation of the discovery rule, the facts of this case do not justify the extremely severe sanction of exclusion.

Reversed and remanded for further proceedings.

CRIMINAL LAW — DISCOVERY — COURT RULES.

A trial court, on a showing of good cause, may modify the requirements of the court rule governing discovery in a criminal case; the prosecution's failure to produce evidence that does not fall within any category of evidence subject to mandatory disclosure or within any category of evidence discoverable under the court rule does not constitute good cause for requiring discovery under the court rule (MCR 6.201[A], [B], and [I]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*Michael J. McCarthy, P.C.* (by *Michael J. McCarthy*), for the defendant.

ON RECONSIDERATION

Before: MURRAY, P.J., and CAVANAGH and SAAD, JJ.

SAAD, J. The prosecution appeals by leave granted the circuit court's order that affirmed the district court's suppression of evidence of two DataMaster breath alco-

hol test results as a discovery sanction and that excluded the results from trial. We reverse.

### I. NATURE OF THE CASE

The district court's discovery order required the prosecution to produce a booking videotape of defendant's DataMaster breath tests, and the court issued a discovery sanction for the prosecution's failure to comply with its order. These orders raise two legal issues under Michigan's reciprocal criminal discovery rule, MCR 6.201: Is the videotape the type of discovery expressly permitted under MCR 6.201 and, if not, may the trial court order the discovery of such material absent a showing of good cause?

We hold that the district court and circuit court erred because (1) our Supreme Court has clearly held that discovery in criminal cases is governed by MCR 6.201, (2) the subject matter of the district court's discovery order, the booking room videotape, does not come within the class of discoverable material permitted by the rule, and (3) defendant failed to establish "good cause" for the discovery under MCR 6.201(I). Therefore, because the district court erred as a matter of law in ordering this discovery, it abused its discretion when it suppressed the test results as a discovery sanction. Accordingly, we reverse the circuit court's affirmance of these rulings and its order that excluded the test results from trial.

### II. FACTS AND PROCEDURAL HISTORY

On September 29, 2004, defendant nearly collided with an Oakland County Sheriff's patrol car at an intersection in Oakland Township. Sergeant Anthony Spencer stopped defendant and issued him a citation for

his failure to yield the right of way. Defendant admitted that he had recently consumed "a beer," and the officer observed that defendant appeared flushed and that his eyes were glassy. Accordingly, another Oakland County Sheriff's officer, Deputy Michael Marohn, administered a preliminary breath test, and, on the basis of the test result, the officers arrested defendant for operating a motor vehicle while under the influence of intoxicating liquor (OUIL).

The deputy sheriffs drove defendant to the Rochester Police Department and took him to the booking room. Deputy Marohn then read defendant his chemical test rights, watched defendant's conduct for 20 minutes, and conducted two DataMaster breath tests. The tests showed that defendant had a breath alcohol content of 0.11 grams of alcohol per 210 liters of breath. Deputy Marohn also observed that defendant's speech was impaired, that his eyes were glassy and bloodshot, and that he smelled of intoxicants. Thereafter, the prosecution charged defendant with OUIL, third offense, a felony pursuant to MCL 257.625(1) and (9).

Unbeknownst to the Oakland County deputy sheriffs, the Rochester Police Department had recently equipped its booking room with a video recording system that was designed to turn on and record when motion sensors detected someone in the room. The system operated on a continuous loop, and, when the tape was full, the system automatically recorded over previous video. Certain testimony suggested that the video system did not work properly at the time of defendant's arrest and that the system may have recorded over the tape of defendant's booking as early as two days after the booking, but other testimony indicated that the system may not have recorded over the tape of defendant's booking for approximately two

weeks. In other words, the record evidence is inconclusive about when the recording of defendant's chemical breath tests may have been erased.

On *October 5, 2004*, defense counsel sought discovery from the prosecution of numerous items of evidence, including "[a]ny videotapes or audio recordings made of the stop, investigation, arrest and post-arrest activity including the booking procedure, advice of rights, and chemical testing." The record reflects that, within five days of defense counsel's request, the assistant prosecutor asked the police department to turn over the Data-Master logs and any in-car video that might exist, but, because she was unaware of the booking room video, she did not ask for a booking video. Indeed, it is undisputed that neither defense counsel nor the prosecution, nor even the Oakland County Sheriff's office, learned of the possible existence of a recording from the booking room until defendant's preliminary examination on *November 2, 2004*.[1] On *November 3, 2004*, the district court issued the disputed order for discovery that granted defense counsel the opportunity to watch the video of defendant's DataMaster tests before November 10, 2004. However, on *November 2, 2004*, the Rochester Police Department, having searched its records at defense counsel's request, prepared a letter that said that the oldest video it had was recorded on *October 8, 2004*, which was several days after defendant's arrest.

On November 30, 2004, at defendant's request, the district court suppressed the DataMaster test results on the grounds that the prosecution had failed to abide by

---

[1] Again, importantly, defendant was arrested and booked on September 29, 2004, and the tape may have been recorded over as early as October 1, 2004, or certainly by October 13, 2004, long before defendant's preliminary examination on November 2, 2004.

the court's November 3, 2004, order for discovery and had failed to comply with defense counsel's discovery request. The prosecution raised the issue again in the circuit court, where it moved to admit the DataMaster test results at trial. However, on August 11, 2005, the circuit court issued a written opinion that affirmed the district court's suppression of the DataMaster results pursuant to MCR 6.201(J).

### III. SCOPE OF DISCOVERY IN CRIMINAL CASES

Unlike in civil litigation, in which the court rules permit far-reaching discovery[2] limited only by the relevancy of the information sought and whether it "appears reasonably calculated to lead to the discovery of admissible evidence,"[3] discovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by our Supreme Court, MCR 6.201.[4] Indeed, in a unanimous opinion authored by Justice CAVANAGH, our Supreme Court has plainly stated that MCR 6.201 governs and defines the scope of criminal discovery in Michigan. *People v Phillips*, 468 Mich 583, 588-589; 663 NW2d 463 (2003), citing Administrative Order No. 1994-10.

In *Phillips*, our Supreme Court unequivocally held that MCR 6.201 controls " 'discovery in criminal cases

---

[2] In civil cases, "[p]arties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party." *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005).

[3] MCR 2.302(B)(1).

[4] "There is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Moreover, due process requires only that the prosecution provide a defendant with material, exculpatory evidence in its possession. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994).

heard in the courts of this state.' " *Phillips, supra* at 588, quoting AO 1994-10. In clarifying what is subject to discovery under Michigan's criminal discovery rule, our Supreme Court held that either the subject of the discovery must be set forth in the rule or the party seeking discovery must show good cause why the trial court should order the requested discovery. Absent such a showing, courts are without authority to order discovery in criminal cases. Specifically, the *Phillips* Court ruled that MCR 6.201 does not permit a trial court to compel the defendant to produce a written report of an expert witness when the report did not already exist. *Phillips, supra* at 584, 593. In reviewing the trial court's original order, the Supreme Court ruled that the plain language of MCR 6.201 did not allow discovery of the reports. The *Phillips* Court had originally remanded the case to the trial court for a "good cause" determination under MCR 6.201(I). After the Supreme Court remanded the case, and after the trial court made its "good cause" ruling, the Supreme Court held that the trial court erred when it concluded that the prosecution had established good cause why the trial court should modify "the requirements and prohibitions" of MCR 6.201 and permit the discovery of the reports. The Supreme Court made clear that the failure to comply with a discovery request or order is simply not "good cause" to permit the discovery of information to which a party is not otherwise entitled under the court rule. Therefore, the Court reversed the trial court's order that required the defendant to produce the reports. The reports were simply not discoverable under Michigan's reciprocal discovery rule. Because the trial court ordered discovery that was not permitted under any section of MCR 6.201, the Court affirmed this Court's reversal of the trial court's order as a matter of law, holding that unless the rule requires production of the

information or the party seeking discovery shows good cause, a trial court is without authority to mandate discovery.[5] *Phillips, supra* at 593.

We agree with the prosecution that, under *Phillips*, because the videotape does not fall under any category of mandatory discovery under MCR 6.201, and because defendant made no showing of good cause, the district court erred as a matter of law in ordering the production of the tape, it abused its discretion when it suppressed the DataMaster test results as a sanction for violating its erroneous discovery order, and the circuit court repeated both errors. Accordingly, we reverse.

IV. ANALYSIS

A. MANDATORY DISCOVERY

In early October 2004, defense counsel made a general discovery request for any videotapes of the arrest and postarrest activities. The version of the reciprocal discovery rule in effect at the time of defendant's discovery request provided, in relevant part:

> Mandatory Disclosure. In addition to disclosures required by provisions of law other than MCL 767.94a; MSA 28.1023(194a), a party upon request must provide all other parties:
>
> (1) the names and addresses of all lay and expert witnesses whom the party intends to call at trial;
>
> (2) any written or recorded statement by a lay witness whom the party intends to call at trial, except that a defendant is not obliged to provide the defendant's own statement;

---

[5] As noted, due process also requires that the prosecution turn over known exculpatory evidence. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *Stanaway, supra* at 666. This is also contemplated in the court rule, MCR 6.201(B)(1).

(3) any report of any kind produced by or for an expert witness whom the party intends to call at trial;

(4) any criminal record that the party intends to use at trial to impeach a witness;

(5) any document, photograph, or other paper that the party intends to introduce at trial; and

(6) a description of and an opportunity to inspect any tangible physical evidence that the party intends to introduce at trial. On good cause shown, the court may order that a party be given the opportunity to test without destruction such tangible physical evidence. [MCR 6.201(A).][6]

The videotape of the booking room does not fall within any of the types or categories of evidence described in the rule, and, therefore, it was not subject to mandatory disclosure under MCR 6.201(A).

Also, the videotape of the booking room is not subject to disclosure under MCR 6.201(B) because it does not fall within any of the categories of discoverable evidence.[7] Further, defendant did not claim, much less show, that the videotape was exculpatory and that the

---

[6] MCR 6.201 applies to discovery in the district and circuit courts of this state. See *People v Sheldon*, 234 Mich App 68, 70-71; 592 NW2d 121 (1999); *People v Pruitt*, 229 Mich App 82, 87-88; 580 NW2d 462 (1998). We recognize that, in Administrative Order No. 1999-3, our Supreme Court made clear that, contrary to a statement in *Sheldon*, MCR 6.201 applies only to felony cases. While, as a multiple offender, defendant Greenfield was clearly charged with a felony in this case, we reiterate for the bench and bar that MCR 6.201 does not apply to misdemeanor cases.

[7] MCR 6.201(B) provided at the time that a prosecuting attorney must disclose evidence under other circumstances:

Discovery of Information Known to the Prosecuting Attorney. Upon request, the prosecuting attorney must provide each defendant:

(1) any exculpatory information or evidence known to the prosecuting attorney;

prosecution knew about it. Defendant failed to present an argument, much less evidence, to establish that anything on the tape would have been favorable to him or that the officer improperly prepared for or administered the tests. Accordingly, the prosecution did not violate any discovery rule when it failed to turn over the videotape upon defendant's request.

### B. GOOD CAUSE

MCR 6.201(I) states that, on good cause shown, a court may order a modification of the requirements of the discovery rule. However, at the preliminary examination on November 3, 2004, defense counsel merely complained to the district court that she had learned that a videotape *might* exist and that the prosecution had failed to produce it, and she asked the court to compel its production. It is axiomatic that the failure to produce evidence that does not fall within any category of discoverable evidence does not constitute good cause to support a discovery order. *Phillips, supra* at 592-593. As the *Phillips* Court explained:

> Because a party is not obligated to disclose reports that do not exist, the fact that defendant did not disclose such reports does not constitute "good cause" to modify the requirements of MCR 6.201(A). We recognize that there

---

(2) any police report concerning the case, except so much of a report as concerns a continuing investigation;

(3) any written or recorded statements by a defendant, codefendant, or accomplice, even if that person is not a prospective witness at trial;

(4) any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and

(5) any plea agreement, grant of immunity, or other agreement for testimony in connection with the case.

may be circumstances where good cause does exist to permit a trial court to compel a party to create expert witness reports. For example, good cause may exist when a trial court believes a party is intentionally suppressing reports by an expert witness. However, such circumstances are not present here. [*Id.*]

Notwithstanding that there was no showing of good cause to support an order requiring the discovery of evidence to which defendant was not otherwise entitled, the district court ordered the prosecution to make it available to defense counsel. This decision constituted a misapprehension of or disregard for the criminal discovery rules. *Id.*

Nonetheless, after the district court orally ordered the production of the videotape, the parties learned that it had already been recorded over and was, therefore, unavailable. Defense counsel moved to suppress the DataMaster test results as a sanction for the prosecution's alleged failure to comply with the discovery order. The district court heard testimony from a Rochester police sergeant who was in charge of the station's recording equipment. He testified that the system had been recently installed and that they had had numerous problems with it because it would record over tapes at inconsistent intervals. Defense counsel argued that she needed the videotape to meaningfully cross-examine the officer who conducted the DataMaster tests. Defense counsel urged the district court to rule that the Rochester Police Department's failure to notify the Oakland County Sheriff's Department about the availability of the videotapes constituted bad faith per se. The district court made the following ruling:

There is an obligation on behalf of the Prosecutor's Office to request the information. The demand for discovery was made. That request specifically outlined a videotape for post arrest activity, including booking procedures,

which was not made to the police agency by virtue of the
admission of the prosecutor today.

Therefore, the Court is going to grant the motion to the
extent that I'm going to suppress any Breathalyzer results
at this point.

This ruling constituted an abuse of discretion. At the
time, MCR 6.201(J) permitted a court, in its discretion,
to "order that testimony or evidence be excluded" for a
party's failure to comply with the discovery rule. How-
ever, for the reasons stated, defendant was not entitled
to discovery of the videotape, the prosecution violated
no discovery rule by failing to turn it over to defendant,
and the district court had no grounds to suppress the
DataMaster test results.[8] In any case, the district court
ruled that, even absent the test results, the prosecution
had presented sufficient evidence to bind defendant
over as charged.

In the circuit court, defense counsel filed a motion to
quash the information and argued that the prosecution
had presented insufficient evidence that defendant was
intoxicated. In response, the prosecution argued that
the district court had adequate evidence to bind defen-
dant over and moved to reverse the district court's
suppression of the DataMaster test results. In an order
signed February 7, 2005, the circuit court denied defen-
dant's motion to quash the information and denied the
prosecution's motion to reverse the suppression ruling.
Defense counsel then filed a motion to dismiss the
charge against defendant, and the prosecution moved

[8] We do not decide in this opinion whether such videotapes *should* be
subject to mandatory discovery. Videotapes of chemical test procedures
may be helpful in defending drunken driving cases. However, the
authority to define the scope of the procedural rules in this state rests
exclusively with our Supreme Court, and we will not expand the scope of
MCR 6.201 here.

for an evidentiary hearing with regard to whether the DataMaster results could be admitted at defendant's criminal trial. The circuit court granted the prosecution's motion for an evidentiary hearing, and, thereafter, the parties stipulated that the court should review the transcripts of the evidence presented to the district court with regard to the booking room videotape. On August 11, 2005, the trial court signed an order that denied the prosecution's motion to admit the Data-Master results. The circuit court cited MCR 6.201(J) as the basis for its ruling and relied on the district court's conclusion that the prosecution had failed to comply with the discovery rules.[9]

Again, for the reasons stated, this ruling constituted an abuse of discretion because the prosecution did not violate MCR 6.201 and, therefore, the sanction of exclusion was not available under MCR 6.201(J).[10] Accord-

---

[9] Further, defendant made no showing that the evidence was exculpatory under *Brady*, and, though the exculpatory nature of the evidence could only be speculative at best, defendant failed to show that the police destroyed the videotape in bad faith, see *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), and *People v Huttenga*, 196 Mich App 633, 642-643; 493 NW2d 486 (1992). Our decision in this case would be different if defendant could show that the prosecution was engaged in gamesmanship or in a deliberate attempt to conceal evidence. Here, however, defendant makes no allegation of any such conduct on the part of law enforcement or the prosecution.

[10] Moreover, even were we to conclude that a discovery violation occurred, we would hold that the exclusion of the DataMaster test results constitutes an abuse of discretion. "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Further, the complaining party must show that the violation caused him or her actual prejudice. *People v Davie (After Remand)*, 225 Mich App 592, 598; 571 NW2d 229 (1997). We review for an abuse of discretion whether a trial court correctly excludes evidence because of an alleged criminal discovery violation. MCR 6.201(J).

ingly, we reverse the circuit court's order that affirmed the district court's suppression of the DataMaster evi-

Unquestionably, a trial court has the inherent power to control the admission of evidence in order to promote the interests of justice. *People v Taylor*, 159 Mich App 468, 483; 406 NW2d 859 (1987). Yet it is equally true that the exclusion of otherwise admissible evidence is an extremely severe sanction that should be limited to egregious cases. *Id.* at 482-483, 487. Further, "[t]he trial court must also recognize that it 'has ample discretionary powers other than preclusion' . . . ." *Id.* at 482, quoting *People v Merritt*, 396 Mich 67, 79; 238 NW2d 31 (1976). Moreover, "[a] remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case." *Taylor, supra* at 487.

The facts here simply do not justify the use of the extremely severe sanction of exclusion. The record reflects that, by the time any of the parties knew about the existence of the tape, it had already been recorded over. Further, any premature destruction of the video recording by the Rochester police was inadvertent and was caused by the automated, computerized recording system rather than any deliberate act. At best, this amounts to negligence rather than bad faith on the part of the prosecution or the police.

Moreover, the exclusion of the DataMaster test results puts defendant in a better position than if the videotape had been disclosed. Clearly, defendant benefited from the exclusion of the incriminating test results because they definitively established that his blood alcohol content exceeded the level permitted under the OUIL statute, MCL 257.625(1)(b). Further, it is pure conjecture to assume that anything on the tape would have been favorable to defendant, and defendant, who is in the best position to do so, failed to assert any facts to suggest that the officer did not properly conduct the tests.

Defendant has also not shown that he suffered any prejudice as a result of the tape's destruction. The video recording was not the only evidence to support the admission of the DataMaster evidence; the preliminary breath test administered at the scene of arrest, as well as the testimony of the arresting officer, supported both the administration of the DataMaster tests and defendant's OUIL charge. Further, as noted, defendant has not alleged or shown that the officer who administered the tests failed to follow proper testing procedures, and he has not argued that any other facts would call into question the reliability of the test results. Simply put, the interests of the courts, the public, and the parties do not support the drastic sanction of suppressing the evidence in this case.

dence and excluded it from trial, and we remand for
further proceedings consistent with this opinion. We do
not retain jurisdiction.

---

As the prosecution argued to the trial court and on appeal, if a
discovery violation occurred, there were also alternative, less radical
sanctions that could have remedied the nonproduction of the videotape.
For example, at trial, the court could have allowed defense counsel to
introduce evidence about the recording and the circumstances surround-
ing its destruction, and defense counsel could then have urged the jury to
draw negative inferences from the tape's destruction. Similarly, defense
counsel could then have undermined the testimony of the officer who
conducted the DataMaster tests by cross-examining him about the
recording system and the destruction of the recording. Moreover, upon a
proper showing, the trial court could have instructed the jury to draw
negative conclusions about the missing evidence. In brief, were there a
discovery violation, the trial court clearly could have and should have
fashioned a remedy other than the severe sanction of excluding the test
results.